WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jim D Smith, | No. CV-24-01143-PHX-DJH |
| Appellant, | **ORDER** |
| v. | |
| Scott H Gan, | |
| Appellee. | |

Appellant Jim D. Smith ("Smith") appeals from a decision of the United States Bankruptcy Court ("Bankruptcy Court") (Doc. 1 at 7–28), reducing his award of attorney fees and expenses. (Doc. 1 at 1). Smith filed his Opening Brief on June 7, 2024, contesting the Bankruptcy Court's reduction of his fee award. (Doc. 5). Although Smith takes eight tries to say it differently,[1] there is only one issue in this case: Did the Bankruptcy Court properly reduce Smith's attorney fees? For the reasons set out below, the Court finds that it did.

**I.    Background**

Smith was appointed a Chapter 7 trustee of this bankruptcy estate. (Doc. 5 at 9). He was later appointed as an attorney ("General Counsel")[2] for the estate as well.

---

[1] Smith sets up his Opening Brief by laying out eight different issues. (Doc. 5 at 2–3). However, all these issues get at the same thing: the award of attorney fees. Therefore, there really is only one issue in this appeal for the Court to address.

[2] The Bankruptcy Court in its Order refers to Smith as General Counsel and to the outside firm Smith hired as Special Counsel. To remain consistent, the Court will use the same terminology.

(*Id.* at 10). Wanting to engage in litigation to undo what Smith believed were fraudulent transfers of property by the Debtor,[3] he hired an outside firm ("Special Counsel") to recover and seek avoidance of the transfers. (Doc. 1 at 11). On October 16, 2013, for its work on the fraudulent transfers, Special Counsel filed its first application seeking attorney fees in the amount of $54,441.50, and expenses in the amount of $877.37. (*Id.*) Special Counsel then filed a second application on July 30, 2014, seeking attorney fees of $78,197 and expenses of $1,312.13. (*Id.*) Another application was filed on August 11, 2015, seeking fees of $17,188.62. (*Id.*) The Bankruptcy Court granted all three applications.

Almost ten years later on July 12, 2023, Smith filed an application for attorney fees totaling $133,125.00 and expenses of $5,864.71. (*Id.*) The judgment of the Bankruptcy Court in response to the application is the disputed action in this appeal. The Bankruptcy Court issued an Order to Show Cause on January 29, 2024, asking Smith, as General Counsel, to respond to the Bankruptcy Court's concerns about his request for fees and expenses. (*Id.* at 9). The Bankruptcy Court expressed apprehension that many of Smith's entries for expenses were unreasonable, unnecessarily duplicative, or were not reasonably likely to benefit the estate. (*Id.* at 8). Smith filed a Response to the Bankruptcy Court's Order to Show Cause, wherein, he argued that he was "working together on this Case and this Litigation," with Special Counsel and should be paid accordingly. (*Id.* at 12). After examining the fee entries and explanations in Smith's Final Report and Account, the Bankruptcy Court found this argument unsatisfactory. (*Id.*) The Bankruptcy Court identified each entry that it took issue with and explained why it found the entry either unnecessarily duplicative, unreasonable, or not likely to benefit the estate. (*Id.* at 7–10). The Court also identified tasks that it found purely administrative, or tasks generally performed by a trustee, not an attorney. (*Id.* at 17). Lastly, the Bankruptcy Court found that the Homestead Exemption did not apply, and the Debtor was precluded from asserting

---

[3] According to the Bankruptcy Code, a Debtor is someone against whom bankruptcy proceedings have commenced. 11 U.S. Code § 101. The Debtor in this case is a Yuma, Arizona resident by the name of Barbara Louise Braden. (Doc. 5 at 9).

the exemption due to a voluntary pre-bankruptcy transfer of an asset.[4]  (*Id.* at 20).  Now, Smith argues the Bankruptcy Court's ruling on his attorney fees should be set aside.[5]  The Court disagrees.

## II.     Legal Standards

The Court has jurisdiction over this appeal under 28 U.S.C. § 158(a) (allowing district courts to take appeals from the bankruptcy court).  Because the sole issue is the amount of attorney fees awarded to Smith, a deferential standard of review applies: "a bankruptcy court's attorney fee determination" should be affirmed "unless the bankruptcy court abused its discretion or erroneously applied the law.[6]" *In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997).  This requires the court affirm the fee award unless it has "a definite and firm conviction that the bankruptcy court committed clear error in the conclusion it reached after weighing all of the relevant factors." *In re Eliapo*, 468 F.3d 592, 596 (9th Cir. 2006).  Factual findings made by the bankruptcy court are reviewed for clear error. *In re Su,* 290 F.3d 1140, 1142 (9th Cir. 2002).

While a person can be appointed as both an attorney and trustee, they are only entitled to attorney fees for work done as an attorney. 11 U.S.C. § 328(b).  They cannot be awarded attorney fees "for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney . . . for the estate." (*Id.*) And even when performing the work of an attorney, the bankruptcy court may award only "reasonable compensation" which may be "compensation that is less than the amount of compensation that is requested." 11 U.S.C. §§ 330(a)(1)(A), 330(a)(2).  In seeking fees,

---

[4] The asset in question is a property located at 38497 E. Lemon Drive, Wellton, Arizona. (Doc. 1 at 20).

[5] The Court notes that the Bankruptcy Court did not summarily deny Smith his fees entirely. Smith requested a total of $133,125.00 in attorney fees and another $5,864.71 in expenses. (Doc. 1 at 7). The Bankruptcy Court ended up granting him $109,455.00 in attorney fees and made no changes in its award of his expenses, which remained at $5,864.71. (Doc. 1 at 28).

[6] Smith states in Opening Brief that the proper standard for the Court to apply is *de novo* review.  (Doc. 5 at 9).  This is wrong. *See  L. Offs. of David A. Boone v. Derham-Burk* (*In re Eliapo*), 468 F.3d 592, 596 (9th Cir. 2006) (using an abuse of discretion standard in reviewing an attorney fee award).

the burden is on the trustee to establish his entitlement to the amount of fees requested. *In re Roderick Timber Co.*, 185 B.R. 601, 606 (B.A.P. 9th Cir. 1995) ("The trustee has the burden of establishing that he or she is entitled to the fees requested.")

### III.   Discussion

Smith's Opening Brief finds different ways to say that he takes issue with the Bankruptcy Court reducing his fee award. (Doc. 5 at 7). He states that the Bankruptcy Court did so *sua sponte*, and that his fee application was uncontested. (*Id.*) Then he questions whether the Bankruptcy Court was "legally correct" to disallow compensation for certain legal services the Bankruptcy Court flagged for review. (*Id.*) He also contests the Bankruptcy Court's rejection of certain fees because those tasks could have been performed by a paralegal.[7] (*Id.*) Going further, he takes issue with the Bankruptcy Court distinguishing between tasks he should have done in his official capacity as trustee and therefore, should not have been compensated for in his capacity as an attorney. (*Id.*) His last bucket of contentions has to do with fees being denied for legal services that "do not have an objective for an immediate monetary recovery," legal services provided when General Counsel and Special Counsel "worked together," and legal fees associated with "two appeals," related to the Homestead Exception. (*Id.*) [8]

Some of Smith's contentions misread the legal standard and others misread the Bankruptcy Court's Order. To begin with, it certainly is true that the Bankruptcy Court did its review of Smith's fees *sua sponte*. (Doc. 1 at 12). Smith uses the uncontested status of his fee application to argue that the Bankruptcy Court somehow should have approved his entire proposed fee award. (Doc. 5 at 6–8). This is simply not true. As the Bankruptcy Court discussed in its Order, under 11 U.S. Code § 330, the Bankruptcy Court can examine

---

[7] Although he says this is his third issue, in the Issue section of his brief, on page 12, under the heading of Argument #3, he takes up another issue. (Doc. 5 at 12). He says the Bankruptcy Court should not have found that the work he performed was duplicative of the work performed by Special Counsel. (*Id.*) For completeness, the Court will address both arguments relating to work that could have been done by a "paralegal" and work that was duplicative with work Special Counsel performed.

[8] The Court notes that Smith lists a different set of issues in the issues section of his brief, and then rewords his issues in the Opening Brief itself. (Doc. 5 at 2 & 13–28).

- 4 -

a fee award on its own motion. *See* 11 U.S. Code § 330 (a)(2) (giving the court authority to award less than the compensation amount requested). The Bankruptcy Court's Order cited to this provision of the statute when it said: "[P]ursuant to § 330, the Court has a duty nonetheless to review the Application for reasonableness of the compensation requested therein." This is an example of Smith misreading both the legal standard and the Bankruptcy Court's Order. Therefore, the Bankruptcy Court properly reviewed the attorney fees *sua sponte*, as it was allowed to do by statutory authority.

Smith then questions how "legally correct" the Bankruptcy Court was in reducing fees, based on Bankruptcy Court's cited cases. (Doc. 5 at 2, 10). He states that the Bankruptcy Court was incorrect in citing cases that were "older," or "not controlling law in this case or the Ninth Circuit." (*Id.* at 10–11). The cases relied upon by the Bankruptcy Court all interpret the same underlying federal statute: 11 U.S. Code § 327(e). (Doc. 1 at 3). They all provide support for the proposition that General Counsel and Special Counsel cannot be paid for providing the same services. (*Id.*) Bankruptcy cases that are interpreting the Bankruptcy Code, but happen to be outside of this Circuit, do not make for bad law. Smith also does not provide any cases that run counter to those cited by the Bankruptcy Court that this Court should look to instead. And his attempts to distinguish the cases are not meaningful. Simply because the cases have slightly different facts or had a different number of attorneys working on them, does not mean that the legal proposition of these cases is not sound. The Court finds that the Bankruptcy Court provided sound reasoning rooted in good law for its conclusions.

Then Smith takes issue with the Bankruptcy Court disallowing fees of $750.00 for time devoted to researching multi-district enforcement of Bankruptcy Court judgments. (Doc. 5 at 12). Smith argues that if there was any overlap between the work he did and the work Special Counsel did on the multi-district judgments, it was on different dates. (*Id.*) This difference in the dates he argues, is enough to award him the entire fee award he requests. (*Id.*) However, the Bankruptcy Court disposed of this argument when it said: "That Special Counsel did not bill for the same work on the same date does not preclude a finding that the work is unnecessarily duplicative." (Doc. 1 at 13) (finding that the work is

- 5 -

duplicative if it is the same task, done by two different attorneys). The Bankruptcy Court went on to state that, "[t]hat work is duplicative absent a showing that one counsel worked on a different legal issue or contributed anything different, regardless of the date the task is billed." (*Id.*) According to the Bankruptcy Court, Smith failed to identify what he did differently on the same task—Default Judgment—compared to Special Counsel. (*Id.*) As to his argument that the Court denied his fees because it found that "the services should have been performed by a paralegal," the Court finds no merit in that argument either. (Doc. 5 at 2). Although the Bankruptcy Court did not use the word "paralegal" anywhere in its 22-page Order, it did use the word "paraprofessional." (Doc. 1 at 17). It did so to highlight that it reduced fees for services such as "filing of affidavits," and preparing and filing "supplemental affidavit of service." (*Id.* at 18) The Court finds the Bankruptcy Court's reasoning persuasive on not allowing duplicative fees for Special Counsel and Smith. The Court also agrees with the Bankruptcy Court in reducing fees for services that it considered paraprofessional services.

Smith then devotes his fourth issue to fees disallowed in the sale of a property called Last Chance Ranch ("The Ranch"). (Doc. 5 at 13). He contests the Bankruptcy Court's findings that the sale was part of his official duties as a trustee, and therefore, should not be billed at his hourly attorney rate. (*Id.*) He argues that the Bankruptcy Court should have delineated what authority it relied on to not give him his attorney rate for the contested real estate sale of The Ranch. (*Id.*) The Bankruptcy Court made clear in its Order that Special Counsel was hired specifically to prevent the fraudulent transfer of The Ranch, among other things. (Doc. 1 at 11). The Bankruptcy Court noted: "[M]r. Smith, as General Counsel, and Special Counsel conducted much of the same work and communicated with the same parties in listing and selling the Last Chance Ranch." (*Id*. at 14). Therefore, the Bankruptcy Court found the work by General Counsel on The Ranch unnecessarily duplicative, and this Court agrees.

As his fifth issue, Smith raises concerns about the Bankruptcy Court's ruling on the Homestead Exemption litigation. (Doc. 5 at 18). Smith had appealed the Bankruptcy

Court's denial of fees related to the Homestead Exemption[9] litigation to the District Court and the Ninth Circuit Court of Appeals. (*Id.* at 19). Not only does Smith seek fees for the litigation itself, but he also seeks fees for the two appeals. (*Id.*) The Bankruptcy Court spent eight pages in its Order explaining why the Homestead Exemption did not apply to the property located at 38497 E. Lemon Drive, Welton, Arizona. (Doc. 1 at 19–22). This is because the debtor in this case, had "made a pre-petition voluntary transfer of the Lemon Drive Property in an effort to conceal the property, and therefore, it was not property of the bankruptcy estate on the filing date." (Doc. 1 at 20). The Bankruptcy Court used the standards outlined in 11 U.S.C. § 522(g), which states that property that was transferred voluntarily or concealed cannot qualify for an exemption. 11 U.S.C. § 522(g); (Doc. 1 at 20). To add more support to its denial of the fees associated with the Homestead Exemption litigation, the Bankruptcy Court found that Smith, through Special Counsel, had filed a Complaint alleging that the Debtor had fraudulently concealed the property. (*Id.*) The Bankruptcy Court entered a Default Judgment against the Debtor and avoided her transfer of the property. (*Id.*) Notably, despite being a party to the litigation, Smith still brought a Motion to Allow Debtor's Homestead Exemption before the Bankruptcy Court. (*Id.*) Therein, he provided no explanation for why 11 U.S.C. § 522(g) did not apply, when in fact, in the underlying litigation to avoid the transfer of the property, Special Counsel alleged that the property was transferred voluntarily and fraudulently. (*Id.*) After filing two appeals after the Bankruptcy Court's determination that the Homestead Exemption did not apply, Smith filed a Notice of Intent to Abandon Interest in the property. (*Id.* at 21). Smith explained to the Bankruptcy Court that anticipated sales expenses and future litigation expenses outweighed any benefit to the estate. (*Id.*) At that point, Smith had already incurred 52.10 hours of filing motions and appeals associated with the Homestead Exemption. (*Id.*) The Court agrees with the Bankruptcy Court's analysis that

---

[9]The Bankruptcy Code allows debtors to exempt certain kinds of property from the estate. 11 U.S. § 522(b)(1). This enables debtors to retain that property post-bankruptcy. (*Id.*) One such exemption is the "Homestead Exemption," which protects the equity in the debtor's residence. 11 U.S. § 522(d)(1); *Owen v. Owen*, 500 U.S. 305, 310 (1991) (explaining the homestead exemption).

the Homestead Exemption does not apply, and Smith should be denied fees associated with the Homestead Exemption litigation and the appeals that followed.

As a last issue, Smith states that the lack of objections to his application for fees and his Homestead Exemption litigation shows that the Bankruptcy Court erred in reducing his fees. (Doc. 5 at 21). He goes on to say that "The disputes in this case were created by the BK Judge and resolved by the same BK Judge." (*Id.* at 22). This Court already did the analysis above on why the Bankruptcy Court could and properly did do a review of Smith's fee entries *sua sponte*. *See supra* III. at 4.

Accordingly,

**IT IS ORDERED** that the Final Judgment of the Bankruptcy Court disallowing $23,670.00 in Attorney Fees (Doc. 1) is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall kindly enter judgment and close this matter.

Dated this 31st day of March, 2025.

Honorable Diane J. Humetewa
United States District Judge